### F. L. OLCOTT v. BERNARD A. GUERINCK.

1. WHEN PLAINTIFF IN ATTACHMENT MAY SUE THE GARNISHEE.

Plaintiff in an attachment proceeding need not wait until final judgment has been rendered in the attachment case, before he may sue the garnishee, but *final judgment* shall not be rendered against the garnishee until the action against the defendant in attachment is determined.

2. SITUS OF A DEBT DUE A FOREIGN CORPORATION.

Where the garnishee in an attachment proceeding residing in Ohio is found to be indebted to a foreign corporation, the *situs* of that debt is in Ohio, and is reached by the proceedings in garnishment.

3. ATTACHMENT OF MONEY OWING TO A CO-PARTNERSHIP.

Money owing to a co-partnership is not liable to attachment in a suit against one of such co-partners.

ERROR to Court of Common Pleas of Cuyahoga county.

MARVIN, J.

The case of F. L. Olcott v. Bernard A. Guerinck, arises under the following state of facts:

Bernard Guerinck brought suit in the court of common pleas of this county about the first of May, 1896, against the Elwood Stove & Stamping, Company, a foreign corporation having its principal office and business in the state of Pennsylvania. This was an action for the recovery of money only, and, on proper affidavit for that purpose, an order of attachment was issued in the action, and garnishee process was issued and served upon the said Olcott.

The only service upon the corporation was by publication. Later in the action, other orders in garnishment were issued and served upon the same garnishee. He made answer as garnishee, which was unsatisfactory to the plaintiff; and thereupon, Guerinck brought suit against Olcott before any final judgment was rendered in that attachment suit. This last suit was heard upon the evidence, and the court found that Olcott had money of the Stamping Company in his hands, applicable to the payment of any judgment which might be recovered by the plaintiff in the attachment suit. Thereafter, and before any judgment was rendered in the suit against Olcott, a final judgment was rendered in the attachment suit against the Stamping Company.

Following that, a motion for a new trial was filed, heard and overruled in the suit against the garnishee and final judgment was rendered against him for the money found by the court to be in his hands applicable to the payment of the judgment in the attachment suit, such sum being less than the amount for which judgment was rendered in the last named case.

It is to reverse this judgment against the garnishee that this proceeding is brought, and it is brought under the provisions of sec. 5551, Rev. Stat.

One of the errors complained of is that the suit was prematurely brought; that suit could not be brought and maintained against the garnishee until after judgment in the attachment suit.

Section 5551, Rev. Stat., which, as has already been said, is the statute under which this suit was brought, reads:

"If the garnishee fail to appear and answer or if he appear and answer, and his disclosure be not satisfactory to the plaintiff or if he fails to comply with the order of the court to deliver the property and pay the money owing into court, or to give the undertaking required in the last section, the plaintiff may proceed against him by civil action; and thereupon such proceedings may be had as in other actions, and judgment may be rendered in favor of the plaintiff for the amount of property and credits of every kind of the defendant in the possession of the garnishee, and for what may appear to be owing by him to the defendant, and for the costs of the proceedings against the garnishee."

Section 5553, Rev. Stat., reads as follows: "Final judgment shall not be rendered against the garnishee until the action against the defendant in the attachment is determined." Without stopping to read more of that section, the implication seems to be clear that the plaintiff in attachment need not wait until final judgment has been rendered in the attachment case before he may sue the garnishee, but *final judgment* shall not be rendered against the garnishee until the action against the defendant in attachment is determined.

In this action no final judgment was rendered until a final judgment had been rendered in the attachment case.

In Myers v. Smith, 29 O. S., 120, the fourth clause of the syllabus reads.

"The defendant in attachment cannot ask the discharge of the garnishees on the ground that their answer fails to show that they have property of the defendant in their hands subject to garnishment. The plaintiff is not concluded by the answer of the garnishee and if the disclosures in their answers are not satisfactory to him, he is authorized to proceed against them by action on that ground."

The fifth clause of the same syllabus reads:

"If the proceeding is purely *in rem*, and the jurisdiction depends on property of the defendant subject to the garnishment being in the hands of the garnishee, the fact that such property exists must be found before the suit in attachment can be proceeded to a final judgment."

Section 5532, Rev. Stat., reads: "The answer of the garnishee shall be made before the clerk of the court of common pleas in the county in which he resides, or, if he resides out of the state, before the clerk of the court of common pleas of the county where he was served, or where the action is pending; a special examination of the garnishee shall be had, and actions against him under sec. 5551, shall be brought in the county in which he resides."

From these sections of the statute and from the case of Myers v. Smith, *supra*, it seems clear that it was the intention of the legislature to provide that the suit against the garnishee might be brought and an ascertainment of the fact of whether there was anything owing by him to the defendant in attachment or any property of defendant in attachment in his hands, and, that thereafter final judgment might be rendered in the attachment case and then the case against the garnishee proceed to final judgment.

There was, therefore, no error in holding that the case was not prematurely brought.

But it is said, that the action against the garnishee could not be maintained, because of the fact that whatever there was in the hands of

the garnishee was an indebtedness by him to this Pennsylvania corpora-
tion. Service upon that corporation, as has already been said, was
obtained by publication only. It is said that the *situs* of that indebted-
ness,—the *situs* of the property was not in Ohio, and that, therefore, no
proceeding in garnishment could hold the property or hold the debt
which was due from the garnishee, if any was due, to the creditor in
Pennsylvania,—the corporation.

The question of the *situs* of such a credit in favor of the foreign cor-
poration against a resident of Ohio has been the subject of a great deal
of litigation and has been passed upon in various states. In this state
the case of Owen v. Miller, 10 O. S., 136, this question was raised; and
on page 143, in the opinion, this language is used:

"We are brought, then, to the simple question, whether the promis-
sory notes given for a debt, being in New Jersey, and the makers of the
notes, or the debtors, residing in Ohio, the property was in New Jersey
or Ohio? In substance, there is a sum of money in the hands of one
man, to which another has title or claim, and the evidence of that title
or claim is a promise in writing to pay the money. Upon principle it
would seem clear, that the subject-matter to which the title or claim
relates is the property, and not the evidence showing the title or claim."

In the case of Root & McBride Bros. v. Davis et al., 51 O. S., 29,
the court in discussing the question involved therein, uses the language
that is claimed to imply at least, that the *situs* of the property in a case
like this would be where the creditor resides, and not where the debtor
resides; the court uses this language on page 36: "It may be conceded
that the credits of a non-resident debtor, without personal service upon
him, cannot be attached in this state, by merely serving the process of
garnishment upon his debtor residing within the jurisdiction of the court,
issuing the process."

For the purposes of the discussion of the question that was then
being considered, the court uses the foregoing language, but does not say
that such is the law; but only, conceding such to be the law, for the
purposes of the case, the result would be the same.

This court has had occasion to pass upon this question, and, in
Wilson v. Gifford, 5 Circ. Dec., 680, an opinion delivered by Judge Cald-
well, after discussing authorities on both sides of the question, authori-
ties outside of Ohio as well as cases in Ohio, this language on page 684
is used: "Taking, then, this law of property, we find no trouble what-
ever in placing Ohio on the side of those states that hold that where a
state has given a right to a creditor, living within its boundaries, to
attach a debt, although the evidence of that debt may be held in another
state, that it has so far given a right by law that the *situs* of that prop-
erty is changed, and is in the state where the writ of attachment is
given." ·

We understand and hold that to be the law, and that, therefore, if it
turned out that the garnishee was indebted to this foreign corporation,
the *situs* of that debt was in Ohio and was reached by the proceedings
in garnishment.

But it is further urged that under the facts of the case there was
nothing in the hands of Olcott, the garnishee, which could be made
applicable to the payment of the claim of the plaintiff in his suit in the
attachment case. The facts in that regard were found and stated by the
court of common pleas; and we think the court was justified in finding

the facts as found. The court found among other things as follows: "That on February 2, 1895, The Elwood Gas Stove & Stamping Company," (that is the defendant in the attachment case, "a corporation organized under the laws of the state of Pennsylvania, doing business in Elwood City, Pennsylvania, and the Cleveland Co-operative Stove Company, a corporation organized under the laws of the state of Ohio, and doing business in the city of Cleveland, Ohio, entered into a contract of partnership under the firm name of The Elwood Gas & Vapor Stove Company, and the said Elwood Gas Stove & Stamping Company, by said agreement contributed to the said partnership, all its property of every kind and description, and, by said agreement, it was to have one-half of the net earnings of said enterprise. The business thereof was conducted by an executive board of three members, two selected by The Cleveland Co-operative Stove Company, and one by the said Elwood Gas Stove & Stamping Company."

So far as the contract is stated in the facts already read, it is stated as shown by the contract which is exhibited in the case. But we think that in addition to the statement as to what was to be contributed to the joint enterprise of these two corporations under their partnership contract, there should be found as additional facts, the provision of the sixth, eighth and ninth clauses of that contract. The sixth clause provides that "The Cleveland Co-operative Stove Company agree to furnish from time to time as required, for the purpose of the joint operation, an amount of capital equal to the value of the plant, machinery, etc., furnished by the Elwood Gas Stove & Stamping Company, and as remuneration therefor, shall be entitled to one-half the profits of the joint business."

The eighth clause is: "It is understood at the termination of the joint operation hereby contemplated, that the plant and other property contributed by the Elwood Gas Stove & Stamping Company, excepting the merchandise and book accounts, shall be returned to it, and that the capital contributed by The Cleveland Co-operative Stove Company may be withdrawn, and after such withdrawal, any assets remaining, after all liabilities shall have been paid, shall be equally divided between the parties hereto. The net profits of the business during the continuation of this joint operation shall be determined annually in August, and such portions of the same as may be thought advisable, shall be divided equally between the parties hereto."

The ninth clause reads: "If the Cleveland Co-operative Stove Company furnishes capital for the joint operation, in excess of the value of the plant of the Elwood Gas Stove & Stamping Company, it is understood that the Cleveland Co-operative Stove Company shall have interest thereon, but if at any time or times, the capital furnished by the Cleveland Co-operative Stove Company shall be less than the value of the plant, then in such event, the Cleveland Co-operative Stove Company shall pay interest on such deficiency."

We think for a proper understanding of the contract entered into, these clauses should receive attention as well as the fourth clause, found in the finding of facts by the court of common pleas.

The court below further found, and was justified, as we think, in finding, that thereafter, that is, after this co-partnership contract between the two corporations already named, there was formed an association by these two corporations and other manufacturers of similar goods, and to

·manage and handle the money or certain parts of the money of that association orpool, Olcott, the defendant below in this action was made the agent or manager, and there is a provision that there shall be placed in his hands by each of those who entered into this pool contract, an amount of money which aggregrated something like $20,000; that this association or pool should fix the amount of the out-put to which each ·one of those entering into the association should be entitled to dispose of, and if any one or more of those entering into· the association should dispose of more than his or their proportionate amount, the one thus ·disposing of an excess should pay on certain goods five per cent. of the price, and on certain others two and one-half per cent. and those ·who should supply less than their proportionate share should be entitled to receive from the manager a certain amount for their failure to supply the full amount to which they were entitled.

The court found that by the manager, statements were made as wat provided in the pool contract should be made, from time to time, what each one of those entering into the association should pay, and whas each one should be entitled to receive out of the pool fund.

The court further found that the orders in garnishment, for, as has already been said, several orders were issued, one after another,—that at each time when the order in garnishment was served upon Olcott, there was in his hands money belonging to and payable to this combination entered into between the Co-operative Stove Company and The Elwood Gas Stove & Stamping Company. And the court further found, as a matter of fact, that each one of these the ·Co-operative Stove Company and The Elwood Gas Stove & Stamping Company, was entitled to one-half of that amount, so owing by Olcott to the combination of those ·two firms. We think that was rather a finding of law than a finding of fact. It depends upon certain other propositions, whether, as a matter ·of fact, each one was entitled to one-half.

Olcott did not pay into court any money as the property of the ·Stamping Company, and he said that he had none belonging to the Stamping Company, but he did have money in his hands belonging jointly to the Stamping Company and the Co-operative Stove Company, under what, for convenience at least, we may call their partnership name " The Elwood Gas Stove & Vapor Stove Company."

The court, in its findings, speaks of a contract entered into between the Co-operative Stove Company, and the Elwood Gas Stove & Stamping Company as a "partnership contract," and it was clearly a contract that, if entered into between natural persons, would have constituted a partnership; and we think, for the purposes of this case, it is proper to treat it as a partnership contract, and we feel justified in so saying from the authorities.

In the case of The Cleveland Paper Co. v. The Courier Co., 34 N. W., 556, and the authorities there cited, justify, we think, the court below, and us, in treating this as a co-operative contract. If that be true, then would the money owed by Olcott to the co-partnership be' be liable to attachment in a suit against one of the co-partners? We think not. Even if this contract was not a co-partnership contract, (it ·clearly was not in all respects, because a corporation has no legal right to be a partner with another corporation or with a natural person,) still ·they have been, as found in the case to which attention has been called ·in the case of The Cleveland Paper Co. v. The Courier Co., *supra*, treated

for certain purposes as co-partnership when they have entered into a contract similar to the one entered into here; but, as already said, if this was simply a joint indebtedness, that is indebtedness to those two parties jointly, and not a debt due to a co-partnership, still we think and hold that the money in Abbott's hands could not be taken in attachment to satisfy a claim against one of these joint creditors.

Wade on Attachments, sec. 490, discusses the proposition as to whether where one is indebted to several parties jointly, even though they be not partners, there can be a subjection of the interest of one of such joint creditors to the payment of his creditor by proceedings in attachment. Though he shows in some instances, that that is allowed, as a matter of principle it seems wrong, and the writer does not subscribe to the doctrine that it can be subjected.

In sec. 491, the discussion is as to whether the interest of one partner may be subjected to the payment of the individual debt of one of the partners, and uses these words: "But where the common law is in force as to special statute from which an exception may be deduced in favor of individual creditors of the joint creditors, when proceeding by attachment, the sounder doctrine seems to be that the joint liability cannot be severed by process of garnishment. Thus it is held in a somewhat recent case in the state of Michigan, that in a suit against several defendants, the garnishee could not be charged on a showing that he was indebted to a part of them only. This decision is based upon the general principle that the action is purely statutory and can not be extended by implication; and the presumption is that if the action had been against one of the defendants, and the garnishee answered that he was not indebted to them all on joint account, the ruling would have been to the same effect."

In Ford v. the Detroit Dry Dock Co., Garnishee, 50 Mich., 358, the court say: "Garnishees can not be held in a suit against joint defendants if their disclosures show an indebtedness to only a part of the defendants." "Garnishment law does not contemplate proceedings to determine the relative rights of several joint defendants where some of them might be entitled to contribution from the others for an excess of property taken beyond their shares."

The report of the case is very brief, and the reasoning, it seems to us, clearly is to the effect that one cannot, even where the creditors are joint without being partners, sever the indebtedness to joint creditors as to subject the interest of one by proceeding in garnishment to the payment of the debtor in attachment.

Here was a contract between these two corporations, The Co-operative Stove Company, and the Elwood Gas Stove and Stamping Company, by which the Stamping Company was to furnish its plant and machinery; the Co-operative Company was to furnish an amount of money equal to the value of that plant and machinery. They were to do business together; they were to have each, one-half of the net profits. The Stamping Company was to receive interest on such a sum as the value of what it contributed was in excess of the value of what was contributed by the Co-operative Company; and if the Co-operative Company contributed a value in excess of the value of the property contributed by the Stamping Company, it was to receive the interest on such excess. The expenses of the joint enterprise were to be paid, and the net profits equally divided, by the two.

Now, how could it be found by the court, or how could the court determine what amount of money would be due to the Stamping Company, of that money which was in Olcott's hands, until there was a determination of the rights of these two companies as between themselves. In that event, we might understand, we think, that the indebtedness or liability of Olcott to that joint enterprise, could not be severed by this proceeding, and that it was not liable to be taken in the attachment, and it was not subject to be taken in the proceedings, that it was ordered to be taken in this case.

Nobody could know whether any part of that was the property of the Stamping Company until the accounts between the Stamping Company and the Co-operative Company were settled.

Entertaining these views the judgment of the court below must be reversed. This being a case in which this court is authorized to enter the judgment which should have been entered below, judgment will be entered dismissing the petition at the cost of the plaintiff.

*Pinney and Hammond,* counsel for plaintiff in error.

*Preusser & Wenneman,* counsel for defendant in error.